**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **LEAH WHATLEY,** individually, and on behalf of all others similarly situated**,** <br><br> Plaintiff, <br><br> v. <br><br> **LASERSHIP INC. d/b/a ONTRAC FINAL MILE**, <br><br> Defendant. | **Case No. 1:25-cv-1468** <br><br> **CLASS ACTION** <br><br> **JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff, Leah Whatley brings this Class Action Complaint, against Defendant, Lasership Inc. d/b/a OnTrac Final Mile ("Defendant"), and each of its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, members, and/or other related entities, and upon personal knowledge as to her own actions, and information and belief as to all other matters, allege as follows:

### INTRODUCTION

1. This action arises out of the public exposure of the confidential, private information of Defendant's current and former employees, Personally Identifying Information[1] ("PII") and Protected Health Information ("PHI") (collectively "Personal Information"), which was in the

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendants, not every type of information included in that definition was compromised in the Data Breach.

possession of Defendant in a cyberattack on its systems, between April 13 and April 15, 2025, caused by Defendant's failures to adequately safeguard that Personal Information ("the Data Breach").

2.      According to Defendant, the Personal Information unauthorizedly disclosed in the Data Breach includes its current and former employees' names, dates of birth, Social Security numbers, driver's license numbers or State ID, medical information, and health insurance information.[2]

3.      Defendant is a major logistics and supply chain company specializing in last-mile delivery services across the United States.[3]

4.      Defendant failed to undertake adequate measures to safeguard the Personal Information of Plaintiff and the proposed Class Members.

5.      Although Defendant purportedly discovered the Data Breach in April of 2025, Defendant failed to immediately notify and warn current and former employees, with Defendant waiting until August 27, 2025, to provide written notice to Plaintiff and the proposed Class.[4]

6.      As a direct and proximate result of Defendants' failures to protect current and former employees' sensitive Personal Information and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class Members have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

**PARTIES**

7.      Plaintiff is a natural person and resident and citizen of California, where he intends to remain.

---

[2] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2967 (last visited Sept. 4, 2025).
[3] https://www.linkedin.com/company/ontrac-shipping/ (last visited Sept. 4, 2025).
[4] Notice of Data Breach ("Notice") attached hereto as **Exhibit A**.

8.    Defendant is a for-profit corporation with its principal place of business located in 14850 Thompson Road, Chantilly, Virginia, 20151.

## JURISDICTION & VENUE

9.    This Court has original jurisdiction over this action under the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, namely Plaintiff, a citizen of California.

10.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District, and Defendant regularly conducts business and enters into contracts within the State of Virginia.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial art of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND FACTS

### A.  Background on Defendant

12.    Defendant is a major logistics and supply chain company specializing in last-mile delivery services across the United States.

13.    According to Defendant's website, it "is the solution of choice for last-mile e-commerce deliveries that helps retailers and shippers build a competitive advantage through faster delivery times, lower costs, coast-to-coast coverage, and reliable on-time performance."[5]

14.    Defendant requires that its employees provide it with their Personal Information, which it requires in connection with it being able to perform these services.

---

[5] https://www.linkedin.com/company/ontrac-shipping/ (last visited Sept. 4, 2025).

15.     Defendant collects and stores Plaintiff's and the proposed Class Members' Personal Information on its information technology computer systems, including but not limited to their names, dates of birth, Social Security numbers, driver's license numbers or State ID, medical information, and health insurance information.

16.     When Defendant collects this Personal Information, it promises to use reasonable care to protect and safeguard the Personal Information, from unauthorized disclosure.

17.     Defendant maintains a Privacy Policy in which it promises to maintain the confidentiality of the Personal Information it collects.[6]

18.     None of the purposes for which Defendant may disclose the Personal Information it collects without authorization includes the Data Breach which came to pass.

19.     Defendant represented to its current and former employees that it would take adequate measures to safeguard their Personal Information, and Plaintiff and members of the proposed Class relied on Defendant's representations when they agreed to provide their Personal Information to Defendant.

20.     Despite its alleged commitments to securing sensitive Personal Information, Defendant did not follow industry standard practices in securing its current and former employees' Personal Information and failed to protect the Personal Information of Plaintiff and the proposed Class Members from unauthorized disclosure in the Data Breach.

**B. Defendant Fails to Safeguard Personal Information—the Data Breach**

21.     On information and belief, according to Defendant, between April 13 and April 15, 2025, Defendant experienced a cyberattack to its computer information technology systems by an "unauthorized" actor, which resulted in the unauthorized disclosure and exfiltration of its current

---

[6] https://www.ontrac.com/privacy/ ("We limit access to your Personal Information to only the employees, contractors, and other authorized service providers who need the information to provide our services to you.")

and former employees' Personal Information, including that of Plaintiff and the proposed Class Members, including names, dates of birth, Social Security numbers, driver's license numbers or State ID, medical information, and health insurance information —the Data Breach.[7]

22.     Nevertheless, Defendant waited over ***four months*** to inform affected current and former employees of the unauthorized disclosure of their Personal Data Breach in the Data Breach, waiting until August 2025 for Defendant to provide written notice to Plaintiff and the Class.

23.     On or about August 27, 2025, Defendant began sending written notice of the Data Breach to affected current and former employees, including Plaintiff, and the proposed Class Members.[8]

2.     The Data Breach Notice stated:

On April 15, 2025, we detected potentially suspicious activity on a limited portion of our computer network. In response, we immediately began an investigation with the assistance of third-party specialists. The investigation determined that certain files may have been accessed without authorization between April 13 and April 15, 2025. Therefore, we worked with third-party specialists to begin a comprehensive review of the files at issue to determine the type of information they contained and to whom the information related. [9]

24.     The Data Breach Notice did not further elaborate on the nature or extent of the Data Breach, omitting its scope or size.

25.     Defendant's conduct, by acts of commission or omission, caused the Data Breach, including: Defendant's failures to implement best practices and comply with industry standards concerning computer system security to adequately safeguard employees Personal Information, allowing Personal Information to be accessed and stolen, and by failing to implement security measures that could have prevented, mitigated, or timely detected the Data Breach, and by failing

---

[7] Exhibit A.
[8] *Id*.
[9] *Id*.

to adequately train its employees on cybersecurity policies, enforce those policies, or maintain reasonable security practices and systems, resulting in the Data Breach.

26.     On information and belief, as more fully articulated below, Plaintiff and the members of the proposed Class Members' Personal Information, was unauthorizedly disclosed to, and actually "exfiltrated by," third-party cybercriminals in the Data Breach, has now or will imminently be posted to the Dark Web for public viewing and use, in the public domain, and/or utilized for criminal and fraudulent purposes and misuse.

**C. Plaintiff's Experience**

27.     Plaintiff is a former employee of Defendant.

28.     As a condition of receiving employment with Defendant, Plaintiff was required to provide her Personal Information to Defendant, including but not limited to his name, date of birth, Social Security number, driver's license number or State ID, medical information, and health insurance information.

29.     Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing her Personal Information. Plaintiff has never knowingly transmitted Personal Information over the internet or other unsecured source.

30.     Plaintiff stores any documents containing his Personal Information in a safe and secure location, and she diligently chooses unique usernames for her passwords and online accounts.

31.     In entrusting her Personal Information to Defendant, Plaintiff believed that, as part of her employment, Defendant would adequately safeguard that information. Had Plaintiff known that Defendant did not utilize reasonable data security measures, Plaintiff would not have entrusted her Personal Information to said Defendant or would not sought employment from Defendant.

32.    Plaintiff received Defendant's Data Breach Notice dated August 27, 2025, informing her that her Personal Information, including her name and Social Security number, were impacted and exfiltrated in the Data Breach.[10]

33.    As a direct and proximate result of the Data Breach permitted to occur by Defendants, Plaintiff has suffered, and imminently will suffer, injury-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale; Plaintiff has been and will be forced to expend considerable time and effort to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of Defendant's Data Breach Notice and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Personal Information, disclosed as a result of the Data Breach.

34.    In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Personal Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining employment.

35.    Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Personal Information in the Data Breach.

36.    Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach, and is experiencing emotional distress over the unauthorized disclosure of her Personal Information. She is experiencing feelings of anxiety, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated

---

[10] Exhibit A.

and addressed by law.

37.     Plaintiff was highly disturbed by the Data Breach's nature and the thought of cybercriminals accessing his highly sensitive Personal Information and the harm caused by the Data Breach.

38.     Plaintiff was also outraged that Defendant took approximately four months to notify her of the Data Breach even as it was discovered in April 2025.

39.     As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as it includes sensitive information that cannot be changed.

40.     Furthermore, Plaintiff's sensitive Personal Information remains in Defendant's possession without adequate protection against known threats, exposing Plaintiff to the prospect of additional harm.

**D.  Defendant Failed to Comply with FTC Guidelines**

41.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

42.     In 2016, the FTC updated its publication, *Protecting PHI: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PHI that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the

system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[11]

43.    The FTC further recommends that companies not maintain PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[12]

44.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45.    These FTC enforcement actions include actions against entities failing to safeguard PHI such as Defendants. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

46.    Defendant failed to properly implement basic data security practices widely known throughout the industry. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to its employees' PHI constitutes an unfair act or practice

---

[11] *See* Federal Trade Commission, October 2016, "Protecting Private information: A Guide for Business," available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last visited Sept. 4, 2025).
[12] *See id*.

prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

47.     Defendant was at all times fully aware of its obligations to protect the Personal Information of its current and former employees. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**E.  Defendant Fail to Comply with Industry Standards**

48.     As shown above, experts studying cyber security routinely identify organizations holding PHI as being particularly vulnerable to cyber-attacks because of the value of the information they collect and maintain. As of 2022, ransomware breaches like that which occurred here had grown by 41% in the last year and cost on average $4.54 million dollars.[13]

49.     A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards. The Center for Internet Security's (CIS) CIS Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[14]

50.     In addition, the National Institute of Standards and Technology (NIST)

---

[13] IBM, "Cost of a data breach 2022: A million-dollar race to detect and respond," available at https://www.ibm.com/reports/data-breach (last visited Sept. 4, 2025).
[14] *See* https://www.rapid7.com/solutions/compliance/critical-controls/ (last visited Sept. 4, 2025).

recommends certain practices to safeguard systems, *infra,* such as:

- Control who logs on to your network and uses your computers and other devices.

- Use security software to protect data.

- Encrypt sensitive data, at rest and in transit.

- Conduct regular backups of data.

- Update security software regularly, automating those updates if possible.

- Have formal policies for safely disposing of electronic files and old devices.

- Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.[15]

51.    Upon information and belief, Defendant failed to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and other industry standards for protecting Plaintiff's and the proposed Class Members' Personal Information—and Defendant failed to ensure that it met those standards—resulting in the Data Breach.

**F. The Data Breach Caused Plaintiff and the Class Members Injury and Damages**

52.    Plaintiff and members of the proposed Class have suffered injury and damages from the unauthorized disclosure of their Personal Information in the Data Breach that can be directly

---

[15] Understanding The NIST Cybersecurity Framework, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last visited Sept. 4, 2025).

traced to Defendant's failure to adequately protect that Personal Information, that has occurred, is ongoing, and/or imminently will occur.

53.    As stated prior, in the Data Breach, unauthorized cybercriminals were able to access the Plaintiff's and the proposed Class Members' Personal Information, which on information and belief is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale, causing widespread injury and damages.

54.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's Personal Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, such as addresses, without permission, to commit fraud or other crimes.

55.    Because Defendant failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class Members have suffered, are at an increased risk of suffering, or will imminently suffer:

a.    exposure of that Personal Information, including said information being posted on the Dark Web for fraudulent, criminal activity or sale;

b.    fraudulent misuse of Personal Information, including fraudulent loans taken out using Personal Information acquired in the Data Breach, fraudulent cellular telephone accounts taken out using Personal Information acquired in the Data Breach; and, identity theft and impersonation using Personal Information acquired in the Data Breach;

c.    Malware, and increase in spam emails;

      d.      The loss of the opportunity to control how Personal Information is used;

      e.      The diminution in value of their Personal Information;

      f.      The compromise and continuing publication of their Personal Information;

      g.      Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

      h.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

      i.      Emotional Distress;

      j.      Delay in receipt of tax refund monies;

      k.      Unauthorized use of stolen Personal Information; and

      l.      The continued risk to their Personal Information, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Personal Information in its possession.

56.      Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

57.      There are myriad dangers which affect victims of identity theft, including: cybercriminals opening new financial accounts, credit cards, and loans in victim's names; victim's losing health care benefits (medical identity theft); hackers taking over email and other accounts; time and effort to repair credit scores; losing home due to mortgage and deed fraud; theft of tax

refunds; hackers posting embarrassing posts on victim's social media accounts; victims spending large amounts of time and money to recover their identities; experiencing psychological harm and emotional distress; victims becoming further victimized by repeat instances of identity theft and fraud; cybercriminals committing crimes in victim's names; victims' personal data circulating the Dark Web forever; victims receiving increased spam telephone calls and emails; victims' children or elderly parents having their identities stolen.[16]

94.    The FTC recommends that identity theft victims take several costly steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, seeking a credit freeze, and correcting their credit reports.[17]

95.    The time-consuming process recommended by the FTC and other experts is complicated by the vulnerable situations of Defendant's employees.

96.    Identity thieves use stolen Personal Information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

97.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

98.    In addition, identity thieves may obtain a job using the victim's Social Security

---

[16] *See* Gaetano DiNardi, Aura.com, "How Bad Is Identity Theft? Is It Serious?" (December 14, 2022) available at https://www.aura.com/learn/dangers-of-identity-theft#:~:text=Fraudsters%20can%20open%20new%20accounts,to%20repair%20your%20credit%20score (last visited Sept. 4, 2025).
[17] *See* https://www.identitytheft.gov/Steps (last visited Sept. 4, 2025).

number, rent a house or receive medical services in the victim's name, and may even give the victim's Personal Information to police during an arrest—resulting in an arrest warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

99.     Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of victims say they have contemplated suicide. Thirty-three percent reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage.  Fifty-four percent reported feelings of being violated. [18]

100.    What's more, theft of Personal Information is also gravely serious outside of the traditional risks of identity theft. In the last two decades, as more and more of our lives become interconnected through the lens of massively complex cloud computing, Personal Information is a valuable property right.[19]

102.    The value of sensitive information is axiomatic; one need only consider the value of Big Data in corporate America, or that the consequences of cyber theft include heavy prison sentences. Even the obvious risk to reward analysis of cybercrime illustrates beyond doubt that PHI has considerable market value.

103.    Theft of Personal Information, in particular, is problematic because: "A thief may

---

[18] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (June 11, 2021), avail. at https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276/ citing Identity Theft Resource Center, "2021 Consumer Aftermath Report," May 26, 2021 available at https://www.idtheftcenter.org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims/ (last visited Sept. 4, 2025).
[19] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[20]

104.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed Personal Information to adjust their insureds' medical insurance premiums.

105.    It must also be noted there may be a substantial time lag–measured in years– between when harm occurs versus when it is discovered, and also between when Personal Information and/or financial information is stolen and when it is used.

106.    Personal Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

107.    Where the most Personal Information belonging to Plaintiff and Class Members was accessible from Defendant's network, there is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and the Class Members are at an increased risk of fraud and identity theft for many years into the future.

108.    Thus, Plaintiff and the Class Members must vigilantly monitor their financial and medical accounts for many years to come.

109.    According to cybersecurity experts, "[r]eports show the value of a health record can

---

[20] See *Medical Identity Theft, Federal Trade Commission Consumer Information* (last visited: Sep. 2, 2025), http://www.consumer.ftc.gov/articles/0171-medical-identity-theft.

be worth as much as $1,000, whereas on the dark web, a credit card number is worth $5 and Social Security numbers are worth $1."[21]

110.    Social Security numbers are among the worst kind of PHI to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.[22]

111.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[23] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

112.    Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of

---

[21] Sanjay Cherian, Forbes Magazine, "Healthcare Data: The Perfect Storm," January 14, 2022, available at https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88 (last visited Sept. 4, 2025).
[22] *See* U.S. Social Security Administration, "Identity Theft and Your Social Security Number," Publication No. 05-10064, July 2021, available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Sept. 4, 2025)
[23] *See id.*

that old bad information is quickly inherited into the new Social Security number."[24]

113.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[25] Medical information is especially valuable to identity thieves. The asking price on the Dark Web for medical data is $50 per person and up.[26]

114.    Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the imminent identity fraud and criminal fraudulent activity; lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

115.    Defendant knew or should have known of these harms which would be caused by the Data Breach they permitted to occur, and Defendant should have strengthened its data systems accordingly.

## CLASS ACTION ALLEGATIONS

116.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated for the following Class:

**Nationwide Class**
All individuals residing in the United States whose Personal Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

---

[24] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb. 9, 2015, http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Sept. 4, 2025).
[25] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Sept. 4, 2025).
[26] *See* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much*, LogDog (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/ (last visited Sept. 4, 2025).

<u>**California Subclass**</u>
All individuals residing in the State of California whose Personal Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "California Subclass").

117.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

118.    Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

119.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. Upon information and belief, the Class is comprised of 40,017 individuals.[27]

120.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    if Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Personal Information;

b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    if Defendant's data security systems prior to and during the Data Breach

---

[27] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a060a232-510d-49db-96b0-96f0c2d807e7.html (last visited Sept. 4, 2025).

were consistent with industry standards;

e.      if Defendant owed a duty to Class Members to safeguard their Personal Information;

f.      if Defendant breached its duty to Class Members to safeguard their Personal Information;

g.      if Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.      if Defendant should have discovered the Data Breach sooner;

i.      if Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.      if Defendant's conduct was negligent;

k.      if Defendant's breach implied contracts with Plaintiff and Class Members;

l.      if Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m.      if Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.      if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

121.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

122.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and

experienced in litigating class actions.

123.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

124.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

125.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

126.    Likewise, particular issues under Rule 42(d)(l) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues

include, but are not limited to:

    a.    if Defendant failed to timely notify the public of the Data Breach;

    b.    if Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    c.    if Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    d.    if Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.    if Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

    f.    if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

127.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

<u>**COUNT I**</u>
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

128.    Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

129.    Plaintiff and the Class Members entrusted their Personal Information to Defendant.

130.    Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using the Personal Information in its care and custody, including implementing

industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

131.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to collectively adequately safeguard the Personal Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Personal Information—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's Personal Information by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the Personal Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

132.    Defendant owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their Personal Information. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Personal Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

133.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from said Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's Personal

Information.

134.    The risk that unauthorized persons would attempt to gain access to the Personal Information and misuse it was foreseeable. Given that Defendants holds vast amounts of Personal Information, it was inevitable that unauthorized individuals would attempt to access their databases containing the Personal Information—whether by a sophisticated cyberattack or otherwise.

135.    Personal Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Personal Information of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

136.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, employees, contractors, vendors, and suppliers, and in handling and securing the Personally Information of Plaintiff and Class Members, which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury-in-fact and damages.

137.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

138.    As a direct, proximate, and traceable result of Defendant's negligence, Plaintiff has suffered or will imminently suffer injury-in-fact and damages, as set forth in the preceding paragraphs.

139.    Defendant's breach of its common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including: exposure of that Personal Information, including being posted on the Dark Web for fraudulent, criminal activity or sale; fraudulent misuse of Personal Information including fraudulent loans, fraudulent cellular telephone accounts, and

identity theft and impersonation using Personal Information acquired in the Data Breach; malware, and increase in spam emails; loss of the opportunity to control how Personal Information is used; diminution in value of their Personal Information; compromise and continuing publication of their Personal Information; out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; emotional Distress; delay in receipt of tax refund monies; unauthorized use of stolen Personal Information; the continued risk to their Personal Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Personal Information in its possession, and, an increased risk of fraud and identity theft.

140.    As a result of the negligence of Defendant, Plaintiff and the Class Members are entitled to recover actual, compensatory, and punitive damages.

141.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) properly notify affected victims of the Data Breach (ii) strengthen their data security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members.

142.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the Personal Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the

exposure of the Personal Information of Plaintiff and the Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Nationwide Class)

143.    Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

144.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's Personal Information.

145.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff's and the members of the Class's sensitive PII.

146.    Defendant violated its respective duties under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Personal Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its current and former employees in the event of a breach, which ultimately came to pass.

147.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive

practices, caused the same harm as that suffered by Plaintiff and the Class Members.

148.    Defendant had a duty to Plaintiff and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's Personal Information.

149.    Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's Personal Information.

150.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

151.    But-for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

152.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Personal Information.

153.    Had Plaintiff and members of the Class known that Defendant did not adequately protect their Personal Information, Plaintiff and members of the Class would not have entrusted Defendant with their Personal Information.

154.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered actual, tangible, injury-in-fact and damages, including: exposure of that Personal Information, including being posted on the Dark Web for fraudulent, criminal activity or sale; fraudulent misuse of Personal Information including fraudulent loans,

fraudulent cellular telephone accounts, and identity theft and impersonation using Personal Information acquired in the Data Breach; malware, and increase in spam emails; loss of the opportunity to control how Personal Information is used; diminution in value of their Personal Information; compromise and continuing publication of their Personal Information; out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; emotional distress; delay in receipt of tax refund monies; unauthorized use of stolen Personal Information; the continued risk to their Personal Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Personal Information in its possession, and, an increased risk of fraud and identity theft.

155.    As a result of the negligence *per se* of Defendant, Plaintiff and the Class Members are entitled to recover actual, compensatory, and punitive damages.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

156.    Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

157.    Defendant offered to provide employment to Plaintiff and the Class Members in exchange for their Personal Information.

158.    Plaintiff and the Class Members accepted Defendant's offer by providing Personal Information to Defendant, in exchange for employment.

159.    In turn, and through internal policies described in the preceding paragraphs, and other conduct and representations, Defendant agreed it would not disclose the Personal Information it collects to unauthorized persons and that they would safeguard that Personal Information.

160.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and the Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Personal Information.

161.    Plaintiff and the Class Members would not have entrusted their Personal Information to Defendant in the absence of such an agreement with Defendant.

162.    Defendant materially breached the contract(s) it had entered into with Plaintiff and the Class Members by failing to safeguard their Personal Information and by failing to notify them promptly of the Data Breach to Defendant's computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and the Class Members by:

       a.     Failing to properly safeguard and protect Plaintiff's and members of the Class's Personal Information;

       b.     Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

       c.     Failing to ensure the confidentiality and integrity of electronic Personal Information that Defendant created, received, maintained, and transmitted.

163.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

164.    Plaintiff and the Class Members have performed as required under the relevant

agreements, or such performance was waived by the conduct of Defendant.

165.     The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

166.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

167.     Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

168.     In these and other ways, Defendant violated their duties of good faith and fair dealing.

169.     Plaintiff and the Class Members have sustained injury-in-fact and damages because of Defendants' breaches of their agreements, including breaches thereof through violations of the covenant of good faith and fair dealing.

170.     As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and the proposed Class Members and are entitled to actual, compensatory, and consequential damages.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

171.    Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

172.    This claim is pleaded as the alternative to the breach of implied contractual duty claim.

173.    Plaintiff and the Class Members conferred a benefit upon Defendant in the form of labor provided for employment and by providing their Personal Information to Defendant in order to receive employment.

174.    Defendant appreciated or had knowledge of the benefits conferred upon themselves by Plaintiff and the Class Members.

175.    As a result of Defendant's conduct, Plaintiff and members of the Class suffered actual damages in an amount equal to the difference in value between the purchases made with reasonable data privacy and security practices and procedures that Plaintiff and the Class Members paid for, and the purchases without unreasonable data privacy and security practices and procedures that they received.

176.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' payments and their Personal Information because Defendant failed to adequately protect their Personal Information. Plaintiff and the Class Members would not have provided their Personal Information, nor used and sought employment from Defendant, had they known Defendant would not adequately protect their Personal Information.

177.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach alleged herein.

<u>COUNT V</u>
**INVASION OF PRIVACY—PUBLIC DISCLOSURE OF PRIVATE FACTS**
**(On Behalf of Plaintiff and the Nationwide Class)**

178.   Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

179.   Plaintiff and the Class Members took reasonable and appropriate steps to keep their Personal Information confidential from the public.

180.   Plaintiff and the Class Members' efforts to safeguard their own Personal Information were successful, as their Personal Information was not known to the general public prior to the Data Breach.

181.   Plaintiff and the Class Members had a legitimate expectation of privacy to their Personal Information, entrusted solely to Defendant for purpose of receiving employment, and Plaintiff and the Class were entitled to the protection of this information against disclosure to unauthorized third parties.

182.   Defendant owed a duty to Plaintiff and the Class Members to keep their Personal Information confidential.

183.   The unauthorized release of Personal Information by Defendants in the Data Breach is highly offensive to a reasonable person.

184.   Plaintiff and the Class Members' Personal Information is not of legitimate concern to the public.

185.   Defendant knew or should have known that Plaintiff and Class Members' Personal Information was private, confidential, and should not be disclosed.

186.   Defendant publicized Plaintiff and members of the Class's Personal Information, by unauthorizedly disclosing it to cyber criminals who had no legitimate interest in this Personal

32

Information and who had the express purpose of monetizing that information through fraudulent misuse and by injecting it into the illicit stream of commerce flowing through the Dark Web.

187.    Indeed, not only is Plaintiff and members of the Class's Personal Information published on the Dark Web, but upon information and belief, it is being used to commit fraud; it is being disseminated amongst, *inter alia,* financial institutions, merchants, creditors, health care providers and governmental agencies.

188.    It is therefore substantially certain that the Plaintiff and the Class Members' Personal Information is rapidly becoming public knowledge—among the community at large— due to the nature of the cyber-attack that procured it, and the identity theft for which it is designed.

189.    As a direct and proximate result of the invasion of privacy, public disclosure of private facts committed by Defendant, Plaintiff and the members of the Class have suffered injury-in-fact and damages as set forth in the preceding paragraphs.

## COUNT VI
### VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT
### CAL. CIV. CODE § 1798.100, *et seq.* ("CCPA")
### (On behalf of Plaintiff and the California Class)

190.    Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

191.    In 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. The CCPA imposes a duty on businesses that maintain personal information of California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement the appropriate procedures which resulted in the Data Breach.

192.    The CCPA also requires "[a] business that discloses personal information about a

California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

193.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper."

194.    Plaintiff and California Class Members are "consumer[s]" as defined by Cal. Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in § 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

195.    Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

    a.    is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners;"

    b.    "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information;"

      c.      does business in California; and

      d.      has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 100,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

196.    The Personal Information compromised in the Data Breach is personal information as defined by California Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and California Class Members' names and Social Security numbers.

197.    Plaintiff's and California Class Members' Personal Information was subject to unauthorized access and exfiltration, theft, or disclosure because their personal information, including name and contact information, was unlawfully accessed, viewed and obtained by an unauthorized third party.

198.    The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to protect the Personal Information of Plaintiff and California Class Members. Defendant failed to implement reasonable security procedures to prevent the unauthorized access of Plaintiff's and California Class Members' Personal Information.

199.    Plaintiff provided Defendant with written notice of its violations of the CCPA on September 4, 2025, pursuant to Civil Code § 1798.150(b)(1). If Defendant fails to respond or has not cured or is unable to cure the violation within 30 days thereof, Plaintiff will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars

($750) per consumer per incident. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

**COUNT VII**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. CIV. CODE § 17200, *et seq.* ("UCL")**
**(On behalf of Plaintiff and the California Class)**

200.     Plaintiff repeats and re-alleges paragraphs 1 through 127 of this Complaint and incorporates them by reference herein.

201.     The California Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200 *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

202.     By reason of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and California Class Members' Personal Information, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

203.     Defendant has violated the UCL by engaging in unlawful, unfair, or fraudulent business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to Plaintiff and California Class Members.

204.     Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that Plaintiff's and California Class Members' Personal Information has been compromised for unauthorized parties to see, use, and otherwise exploit.

205.     Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and California Class Members' Personal Information also constitutes "unfair" business acts and practices within

36

the meaning of Business & Professions Code sections 17200 *et seq*., in that Defendant's conduct was substantially injurious to Plaintiff and California Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

206.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and California Class Members' Personal Information with knowledge that the information would not be adequately protected; by violating the other statutes described above; and by storing Plaintiff's and California Class Members' Personal Information in an unsecure electronic environment in violation of HIPAA and California's data breach statute, Cal. Civ. Code § 1798.81.5, which require Defendant to take reasonable methods of safeguarding Plaintiff's and California Class Members' Personal Information.

207.    Defendant's practices were also unlawful and in violation of Civil Code sections 1798 *et seq*. and Defendant's own privacy policy because Defendant failed to take reasonable measures to protect Plaintiff's and California Class Members' Personal Information.

208.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code §1280.15(b)(2).

209.    Defendant's business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the Personal Information obtained by Defendant will remain private and secure, when in fact it has not been maintained in a private and secure manner, and that Defendant would take proper measures to investigate and remediate a data breach, when Defendant did not do so.

210. Plaintiff and California Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above- described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their Personal Information.

211. But for Defendant's misrepresentations and omissions, Plaintiff and California Class Members would not have provided their Personal Information to Defendant, or would have insisted that their Personal Information be more securely protected.

212. As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and California Class Members were injured and lost money or property, including but not limited to the price received by Defendant for its services, the loss of Plaintiff's and California Class Members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as described herein.

213. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and California Class Members' Personal Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and California Class Members.

214. Plaintiff seeks prospective injunctive relief, including improvements to Defendant's data security systems and practices, in order to ensure that such security is reasonably sufficient to safeguard that remains Personal  Information in Defendant's custody, including but not limited to the following:

     a. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks,

penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d.  Ordering that Defendant segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.  Ordering that Defendant not transmit Personal Information via unencrypted email

f.  Ordering that Defendant not store Personal Information in email accounts;

g.  Ordering that Defendant purge, delete, and destroy in a reasonably secure manner patient data not necessary for provisions of Defendant's services;

h.  Ordering that Defendant conduct regular computer system scanning and security checks;

i.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j.  Ordering Defendant to meaningfully educate its current, former, and prospective consumers about the threats they face as a result of the loss of their Personal Information to third parties, as well as the steps they must take to protect themselves.

215.    Unless such Class-wide injunctive relief is issued, Plaintiff and California Class Members remain at risk, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Defendant's representations regarding its data security in the future.

216.    Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the California Class, seeks monetary relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including but not limited to restitution to Plaintiff and California Class Members of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices; restitutionary disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices; declaratory relief; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated individually, requests that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing Plaintiff's counsel to represent the Class;

B.    Awarding Plaintiff and the Class damages that include applicable compensatory, actual, exemplary, and punitive damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.      Awarding injunctive relief as is necessary to protect the interests of Plaintiff and

the Class;

F.      Awarding attorneys' fees and costs, as allowed by law;

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

I.      Granting such other or further relief as may be appropriate under the circumstances.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 4, 2025                Respectfully submitted,

                                        /s/ *Lee A. Floyd*
                                        Lee A. Floyd (VSB No. 88459)
                                        Justin M. Sheldon (VSB No. 82632)
                                        **BREIT BINIAZAN, PC**
                                        2100 East Cary Street, Suite 310
                                        Richmond, Virginia 23223
                                        Telephone: (804) 351-9040
                                        Facsimile: (804) 351-9170
                                        Lee@bbtrial.com
                                        Justin@bbtrial.com

                                        David K. Lietz*
                                        **MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN, PLLC**
                                        5335 Wisconsin Ave. NW, Suite 440
                                        Washington, DC 20015
                                        Phone: 866.252.0878
                                        dlietz@milberg.com

                                        *Counsel for Plaintiff and the
                                        Proposed Class*

                                        *Pro Hac Vice Forthcoming*